[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12774
Non-Argument Calendar
_____

D.C. Docket Nos. 2:10-cv-01106-MHT-WC,
2:03-cr-00259-001-MHT-WC-1

LEON CARMICHAEL, SR.,

Petitioner - Appellant,

versus

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(August 30, 2016)

Before ROSENBAUM and JILL PRYOR, Circuit Judges, and SCHLESINGER,[*]
District Judge.

_____

[*] Honorable Harvey E. Schlesinger, United States District Judge for the Middle District
of Florida, sitting by designation.

PER CURIAM:

Appellant Leon Carmichael, Sr., appeals the district court's denial of his *pro se* 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence.  This Court granted a certificate of appealability on the issue of whether the district court abused its discretion in denying, without an evidentiary hearing, Carmichael's claim that he would have pled guilty if his trial counsel had advised him of the extent and nature of the Government's evidence, the possibility of pleading guilty, and the Government's informal plea offers.

Recently, the Government filed a supplemental brief to this Court.  In it, the Government conceded that the district court abused its discretion when it denied Carmichael's ineffective-assistance claim without first conducting an evidentiary hearing.  Because we agree with the parties and find that Carmichael alleged sufficient facts in his § 2255 motion and affidavit that, if proved true at an evidentiary hearing, would establish deficient performance and prejudice, we reverse the district court's denial of Carmichael's § 2255 petition and remand to the district court to hold an evidentiary hearing regarding Carmichael's ineffective-assistance claim.

## I.    Background

### A. Carmichael's Underlying Conviction and Direct Appeal

On June 17, 2005, following an eleven-day trial, a jury found Carmichael guilty of two offenses: a marijuana-distribution conspiracy concerning 7,000 pounds of marijuana, and a money-laundering conspiracy. The district court sentenced Carmichael to 480 months in prison, consisting of 480 months in prison on the marijuana-distribution conspiracy conviction and 240 months in prison on the money-laundering offense, to run concurrently with each other. In addition to Carmichael's prison sentence, the court also ordered Carmichael to forfeit the Carmichael Center (an entertainment complex and music venue that Carmichael owned), Carmichael's personal residence, and an automobile.

Carmichael timely filed a notice of appeal from the final judgment. After oral argument, this Court affirmed Carmichael's conviction and sentence, *see United States v. Carmichael*, 560 F.3d 1270 (11th Cir. 2009), and denied Carmichael's petition for rehearing, *see United States v. Carmichael*, 347 F. App'x 556 (11th Cir. 2009). The United States Supreme Court denied Carmichael's petition for writ of certiorari on January 11, 2010. *See Carmichael v. United States*, 558 U.S. 1128, 130 S. Ct. 1093 (2010). None of the issues Carmichael raised in his direct appeal relate to the issues currently before us.

4

## B. Carmichael's § 2255 Motion and Allegations of Ineffective Assistance of Counsel

Carmichael, proceeding *pro se*, timely filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Motion"). He asserted that when he was deciding whether to plead guilty or risk a conviction at trial, his attorneys failed to explain the weight and extent of the Government's evidence, advise him of the applicable sentence if he was convicted, pursue plea negotiations, and convey plea offers from the Government. Carmichael also alleged that he was entitled to an evidentiary hearing on his claims.

In Carmichael's affidavit in support of the Motion, he alleged specific facts about his interactions with counsel regarding plea negotiations, alleging that if he had been better informed, he "would not have gone to trial but rather pleaded guilty. . . ." Specifically, Carmichael attested that he initially asked the lead attorney on his case, Stephen Glassroth, about pursuing plea negotiations with the Government. Glassroth responded that he wanted to complete discovery before negotiating a plea deal. But Glassroth left the case before conducting plea negotiations, and Lisa Wayne, who had been assisting Glassroth before he left, took over as lead attorney on Carmichael's case.[1] Wayne was located in Denver,

---

[1] Glassroth withdrew from Carmichael's case in November 2004, after serving as lead counsel for Carmichael for one year. Attorney Susan James stated in her affidavit that "[a] controversial website was created at Carmichael's direction and as a result his defense was undermined and compromised." James alleged that, related to this website, one of Carmichael's other attorneys at the time, Ron Wise, withdrew; another of Carmichael's attorneys, Bruce

Colorado.  Attorney Marion Chartoff assisted Wayne.  Glassroth had previously hired Chartoff as a contract attorney to conduct research, draft motions and briefs, and assist Glassroth and Wayne with tasks related to the case.  After Glassroth withdrew from Carmichael's case, Carmichael also hired attorney Susan James to assist Wayne.

According to Carmichael, when he asked James about pursuing plea negotiations, James responded that she was new to the case and advised Carmichael that he should contact Wayne.  James also informed Carmichael that Wayne directed James not to do anything on the case without Wayne's permission.

As for Wayne, Carmichael alleged that she said that she would make several trips to Montgomery to work on the case and conduct plea negotiations, if possible.  But, Carmichael attested, Wayne never made the promised trips to Montgomery and instead arrived in Montgomery only two days before the start of Carmichael's trial.

Carmichael further alleged that Wayne never mentioned any plea offers to Carmichael and, from that, Carmichael "assumed, in [the] absence of word from [his] attorneys to the contrary, that the Government did not want to negotiate a

---

Maddox, became a trial witness; and "Steve Glassroth, after being threatened with indictment, withdrew."  Glassroth indicated to Wayne "that he had been ordered not to discuss the reasons for his removal from the case, and that [Wayne] would have to try the case without his assistance, or presence."

plea." As Carmichael related the relevant facts, Carmichael discovered only later that the Government was receptive to negotiating a plea and did offer plea deals.

In addition, Carmichael asserted that James told him that she and Wayne had gotten their signals crossed when it came to communicating plea offers to Carmichael. According to Carmichael, Wayne thought James was communicating with Carmichael regarding plea negotiations because James was local counsel and Wayne was in Colorado, but James was not because she had received no such direction from Wayne. As a result, Carmichael contended that he was never fully advised about his case or plea negotiations "because each of [his] lawyers thought the others were discussing such matters with [him]." Carmichael stated that he "sensed a large measure of dysfunction and lack of coordination between attorneys Wayne, James, and Chartoff," and that, because of this dysfunction, he believed that plea offers made by the Government were never relayed to him.

As an example in support of Carmichael's allegation that his defense counsel lacked coordination and failed to communicate with him regarding plea negotiations, Carmichael alleged that after the jury returned its verdict, he overheard a conversation between Assistant United States Attorney Stephen Feaga and James in which Feaga referred to a previous five-year plea offer that Carmichael had never heard about from his attorneys.

7

After hearing this conversation, Carmichael asked James about the five-year plea offer, but James refused to respond to his inquiries and instead referred Carmichael to Wayne. Wayne, in turn, told Carmichael that "local" counsel would take care of such matters and would be responsible for any and all plea negotiations (referring to James). Carmichael stated that if he had known about the five-year plea offer, he "probably would have executed" it.

As another example, Carmichael alleged that, also after the jury verdict, his attorneys informed him that the Government had made a plea offer while the jury was deliberating. But his attorneys told him that they did not convey the offer to him because he was at the hospital visiting his sick mother at the time the Government made the offer. According to Carmichael, by the time his attorneys communicated this alleged plea offer to him, the jury had already reached its guilty verdict. Carmichael attested in his affidavit that he "would most definitely [have] taken any reasonable deal at that juncture because [he] had no doubt that the jury would convict [him] after sitting through the trial and realizing all the mistakes made, the unduly prejudicial evidence/testimony presented against [him] and the lack of effective assistance of counsel."

Finally, Carmichael stated that his counsel never informed him that the Government could introduce certain damaging evidence at trial and that, had he known about this evidence, he would have pled guilty.

8

### C. Defense Attorneys' Affidavits in Response to Carmichael's § 2255 Motion

In response to Carmichael's Motion and his supporting affidavit, on January 4, 2011, the district court ordered several of Carmichael's attorneys to file affidavits with the court addressing Carmichael's ineffective-assistance allegations.[2]

#### i. Lisa Wayne's Affidavit

As relevant to Carmichael's allegations, Wayne conceded that she had not visited Montgomery to conduct trial preparation because resources for her to do so were unavailable, though she attested that she engaged in numerous phone calls with Carmichael and his other attorneys in preparation for trial.

Because James was local, Wayne stated that she and James agreed that James would meet with Carmichael, continue to coordinate the investigation, and strategize for trial. Wayne asserted that she did not direct James or any of the other lawyers that they could not perform services as they saw fit, though she acknowledged that there was "discord" between herself and James and that Wayne and James "disagree[d]" regarding case investigation and trial strategy. She also stated that Carmichael did not hire her to direct other lawyers, she did not agree to do so, and Carmichael never asked her to do so.

---

[2] While as many as twelve attorneys represented Carmichael during his pre-trial, trial, and appellate proceedings, we discuss the affidavits of only Wayne, Chartoff, and James in this opinion, as these attorneys' affidavits provide the relevant information regarding Carmichael's ineffective-assistance claim.

In Wayne's affidavit, she only briefly responded to Carmichael's allegations concerning plea negotiations. Wayne stated that she recalled a conversation with Glassroth about a disposition that did not involve forfeiture of the Carmichael Center, but since she was not in a position to communicate with the Government about a plea offer while Glassroth was lead counsel, she assumed a favorable negotiation never occurred. Wayne also asserted that she was never aware of any discussions that James may have had regarding a five-year plea offer. Despite Wayne's assertion that she had numerous phone conversations with Carmichael regarding the strength of the Government's evidence against him in his case, Wayne stated that Carmichael maintained his innocence throughout the time she represented him.

### ii.   Susan James's Affidavit

James claimed that, once Glassroth withdrew from the case, Wayne elevated herself to lead counsel, and James understood from Wayne that all aspects of Carmichael's defense "would be at Wayne's direction." Indeed, James emphasized that her deference to Wayne as lead counsel was a condition of Wayne's agreement with Carmichael to hire James after Glassroth withdrew from the case. But Wayne did not come to Alabama to prepare for trial until a few days beforehand, so no strategy meetings, discussions on anticipated evidentiary issues, or meaningful delegation of assignments occurred in the case.

James further asserted that she believed Carmichael was denied effective assistance of counsel. In particular, James agreed with Carmichael's statement that he received no plea-negotiation information because James and Wayne each thought that the other was handling negotiations with the Government. According to James, Carmichael's assessment that his defense team was dysfunctional, and his trial attorneys lacked coordination was correct.

Regarding James's plea negotiations with the Government, James attested that she recalled a conversation with Feaga the weekend before Carmichael's trial where Feaga said that he could "run a plea offer 'up the flag pole' with his supervisors if Carmichael would be so inclined to take it." But James thought that any plea offer would include forfeiture of the Carmichael Center. James stated that she thought she mentioned this to Carmichael, and Carmichael was "adamant [that] he did not want to forfeit the Carmichael Center." So no one took any further action with regard to the offer. James vaguely recalled "talking with the prosecutors at some point about a 20 year deal," but she did not recall a plea offer made during jury deliberations.

Finally, James conceded that it was possible that some of the evidence elicited at trial was never discussed with Carmichael because, although James had frequent contact with Carmichael, all four trial lawyers were never present with him at the same time until the weekend before his trial.

11

### iii.  Marion Chartoff's Affidavit

As a contract attorney hired to assist Glassroth and Wayne, Chartoff stated that she did not recall ever having a comprehensive conversation with Carmichael regarding all the prejudicial information that could be introduced against him, and she did not know if other counsel had had such a conversation.  But Chartoff did recall a meeting that was held a week before Carmichael's trial at which the defense team discussed some of the witnesses who could present damaging evidence against Carmichael.

Like James, Chartoff attested that Wayne was lead counsel and had ultimate decision-making authority over the case.  She also stated that Wayne was responsible for "oversight of co-counsel."

After Glassroth's withdrawal as lead counsel, Chartoff opined, the defense team lacked coordination and organization, and disputes and tensions existed among members of defense counsel.  Despite these issues, though, Chartoff asserted that she was unaware of any plea offers made to Carmichael.  She likewise had no knowledge of any effort to negotiate a plea for Carmichael.

### D. The Government Attorneys' Affidavits in Response to Carmichael's § 2255 Motion

In its response to Carmichael's Motion, the Government also submitted affidavits from some of the prosecutors involved in the case.  These affidavits establish that the Government sought to settle Carmichael's case with a plea deal

and, at least at one point, attempted to negotiate a plea deal that did not include forfeiture of the Carmichael Center. But these affidavits also provide that the Government never made any concrete plea offers because Carmichael's counsel gave the Government the impression that Carmichael was uninterested in settling the case.

### i. A. Clark Morris's Affidavit

First Assistant United States Attorney A. Clark Morris represented the Government in Carmichael's prosecution. Morris attested in her affidavit that "[d]uring the two weeks prior to [Carmichael's] trial, the Government attempted to negotiate a settlement of the case." In pursuit of this settlement, AUSA Morris stated that the Government spoke with James about the possibility of settling the case. Morris concluded, however, that "it was clear that Carmichael was uninterested in settling the case, [so] the Government never made any concrete or formal settlement offer for either [a] five, ten or twenty year[ ] sentence."

On the other hand, Morris recounted that the Government had had discussions with Carmichael's attorneys regarding the "possibility of a ten year sentence with forfeiture of the Carmichael Center," but never entered into discussions regarding a five-year sentence.

Morris stated that "the Government never made any formal settlement offer" to Carmichael largely because of the Government's understanding that Carmichael

13

would deny any settlement that included forfeiture of the Carmichael Center. Because any plea agreement the Government might enter with Carmichael had to be approved by United States Attorney Leura G. Canary, who was adamant that any plea agreement include forfeiture of the Carmichael Center, Morris stated that "plea negotiations were never profitable."

### ii.  Stephen P. Feaga's Affidavit

Assistant United States Attorney Stephen Feaga also represented the Government in its prosecution of Carmichael.  Feaga attested that he "recall[ed] a couple of discussions with the defense about the possibility of a guilty plea by Mr. Carmichael."  But, as Feaga recalled the plea conversations in which he was involved, "[a]ll discussions included mandatory language that any sentencing reduction recommendation would be based on an assessment of Mr. Carmichael's cooperation in the prosecution and conviction of other guilty parties."  The plea negotiations that Feaga discussed did not require forfeiture of the Carmichael Center as a mandatory term of any plea offer.

Feaga further attested that, initially, the Government was willing to enter into only a plea agreement that, at best, called for a sentence recommendation of no more than twenty years.  Then, after discussions with United States Attorney Leura G. Canary, the Government offered defense counsel the possibility of a sentence recommendation as low as ten years if the Government, in its sole

14

discretion, believed Carmichael provided extraordinary substantial assistance. But Feaga recalled that Carmichael's counsel wanted a guarantee of less time, and the Government was "never willing to enter into such an agreement." Feaga stated that the Government never offered Carmichael a plea agreement that included a five-year sentence recommendation and noted that the plea discussions with Carmichael's counsel never resulted in any agreement.

### E. The District Court's Decision

Based on the filings in the case and without an evidentiary hearing, the magistrate judge issued a report and recommendation ("R&R") recommending that the district court deny Carmichael's Motion. In reaching this conclusion, the magistrate judge noted that Carmichael's attorneys undertook plea negotiations with the Government but opined that they were hamstrung by Carmichael's insistence that he would not forfeit the Carmichael Center as part of any plea deal. Moreover, because the Government did not make any firm plea offers, the R&R reasoned, counsel did not perform deficiently in failing to convey an offer to Carmichael. In addition, the R&R found no evidence that the district court would have sentenced Carmichael to less than forty years' imprisonment had he not gone to trial. Finally, the R&R reasoned that, while not dispositive, Carmichael's claims of innocence throughout his trial undermined his claim that he would have pled guilty. As a result, the R&R explained, Carmichael's allegations, taken as true,

failed to demonstrate that he was prejudiced by the alleged deficiencies in his counsel's performance.

Carmichael filed a *pro se* objection to the R&R. In his objection, Carmichael disputed that he refused to accept any plea agreement that included forfeiting the Carmichael Center, noted that a defendant who maintains his innocence may still have reasons for pleading guilty, and argued that he demonstrated prejudice. He also argued that the magistrate judge erroneously determined that, because the plea negotiations did not result in firm offers, counsel did not perform deficiently by failing to communicate regarding plea negotiations. Rather, Carmichael argued that nothing requires a plea offer to be firm before it is communicated to a defendant, and that Carmichael's counsel failed to communicate with him regarding the informal plea negotiations.

In addition, Carmichael filed a motion and supporting affidavit specifically requesting an evidentiary hearing on his claims. In his affidavit, Carmichael reiterated that James had not informed him of any pre-trial plea negotiations and that he was not told that the Government had offered a ten-year sentence with forfeiture of the Carmichael Center. Carmichael alleged that, had he been told about this deal, he would have accepted it. He also stated that, after the forfeiture hearing but before Carmichael's sentencing, Carmichael received a twenty-year offer from the Government in exchange for his cooperation, but that James and

16

appellate counsel indicated that it was not a good deal. In Carmichael's view, this was the post-trial, twenty-year offer that James vaguely recalled in her affidavit.

The magistrate judge denied Carmichael's motion for an evidentiary hearing, and the district court adopted the R&R, denying Carmichael's § 2255 motion.

### F. COA and Supplemental Briefing in this Court

At Carmichael's request, a judge of this Court granted a certificate of appealability on the following issue:

> Whether the district court abused its discretion in denying, without an evidentiary hearing, Carmichael's claim that he would have pleaded guilty if his trial counsel had advised him of the extent and nature of the Government's evidence, the possibility of pleading guilty, and the Government's informal plea offers.

While the Government initially filed responsive briefs arguing that the district court did not abuse its discretion in denying Carmichael's Motion without an evidentiary hearing, in supplemental briefing, the Government changed its position.

Now, the Government agrees with Carmichael that the district court abused its discretion in denying Carmichael's Motion without first conducting an evidentiary hearing. Specifically, the Government states that it "will pretermit argument on the merits of the ineffective assistance of counsel claims until after a full evidentiary hearing on the issues has transpired." While the Government

17

maintains that Carmichael did not receive constitutionally ineffective assistance of counsel, the Government now concedes that the district court should have held an evidentiary hearing on Carmichael's claims because Carmichael adequately pled facts in his § 2255 Motion that, if proved to be true at a hearing, would establish deficient performance and prejudice.

We agree.

## II.    Standard of Review

This Court reviews a district court's denial of an evidentiary hearing in a § 2255 proceeding for an abuse of discretion. *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015) *cert. denied*, 136 S. Ct. 429 (2015) (citing *Aron v. United States*, 291 F.3d 708, 714 n. 5 (11th Cir. 2002)).

## III.    Discussion

A petitioner is entitled to an evidentiary hearing if he alleges facts that, if true, would entitle him to relief. *Hernandez v. United States*, 778 F.3d 1230, 1232 (11th Cir. 2015). But a district court need not hold an evidentiary hearing if the petitioner's allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Id*. (quotations omitted).

When a petitioner alleges ineffective assistance of counsel in the context of plea negotiations, the two-part test articulated in *Strickland v. Washington*, 466

U.S. 668, 104 S. Ct. 2052 (1984), applies.  *See Rosin*, 786 F.3d at 877.  Therefore, in order to be entitled to an evidentiary hearing on an ineffective-assistance claim, a petitioner must show that (1) trial counsel's performance was deficient; and (2) trial counsel's deficient performance prejudiced his defense.  *Id*.

We agree with the parties in this case that the district court abused its discretion in not granting Carmichael's request for an evidentiary hearing on his ineffective-assistance claim.  Taking Carmichael's allegations as true, Carmichael alleged sufficient facts to establish both deficient performance and prejudice in the context of plea negotiations.

### A. Carmichael sufficiently alleged deficient performance.

Under the first prong of *Strickland*, counsel's performance is deficient if it falls below an objective standard of reasonableness and is "outside the wide range of professionally competent assistance."  *Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011) (quoting *Strickland*, 466 U.S. at 688, 690, 104 S. Ct. at 2064, 2066).  Courts must indulge the "strong presumption" that counsel's performance was reasonable.  *Jennings v. McDonough*, 490 F.3d 1230, 1243 (11th Cir. 2007) (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (quotation omitted)).  As a result, a petitioner must show that "no competent counsel would have taken the action that his counsel did take."  *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

While the duties and responsibilities of defense counsel in the plea-bargaining process are difficult to define, as the "art of negotiation is at least as nuanced as the art of trial advocacy," defense counsel must communicate formal plea offers from the prosecution. *Missouri v. Frye*, 566 U.S. __, 132 S. Ct. 1399, 1408 (2012) (quotation omitted).  In addition, counsel has an obligation to consult with her client on important decisions and to keep him informed of significant developments in the course of his prosecution. *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991).   Negotiating a plea agreement stands as a "critical point for a defendant" in the development of his case. *Frye*, 566 U.S. at __, 132 S. Ct. at 1407.

Here, if the allegations in Carmichael's Motion and supporting documents are true, Carmichael sufficiently pled deficient performance to warrant an evidentiary hearing.  First, Carmichael attested that none of his attorneys ever discussed plea negotiations with him until after his conviction and that Wayne and James each thought that the other was communicating with him regarding plea offers.  And with the exception of James's statement that she "thought" she had mentioned to Carmichael the possibility of a plea involving forfeiture of the Carmichael Center, James agreed with Carmichael that he did not receive plea-negotiation information because James and Wayne each thought that the other was handling negotiations with the Government.

As for James's remarks that "Carmichael was adamant [that] he did not want to forfeit the Carmichael Center," Carmichael responded that James never told him of the deal for ten years and forfeiture of the Carmichael Center. To the extent that James's statement that she "thought" she had told Carmichael about the plea offer contradict Carmichael's claims that she did not do so, a material conflict requiring a hearing exists. Indeed, Carmichael's other attorneys' affidavits do not establish that they actually discussed plea negotiations with him, either.

Further, Carmichael alleged that the "dysfunction and lack of coordination" between his attorneys led to plea negotiations not being communicated to him. Supporting this allegation, James attested that Wayne, as lead counsel, instructed her not to take any action without instruction from Wayne. But Wayne attested that she was not lead counsel and did not direct the other lawyers on Carmichael's defense team. Chartoff seemed to align with James on this issue, stating that Wayne was lead counsel, had ultimate decision-making authority over the case, and oversaw co-counsel. Chartoff, Wayne, and James all acknowledged that tensions and discord among members of the defense team affected how they handled Carmichael's case.

While Carmichael's attorneys all blamed each other for failing to communicate with Carmichael concerning plea negotiations, the Government attorneys confirmed that plea negotiations with Carmichael's team did, indeed,

21

occur.  Morris recalled a ten-year plea offer with Carmichael's attorneys, provided that forfeiture of the Carmichael Center was part of any deal.  And Feaga remembered discussing a twenty-year and a ten-year sentence recommendation with Carmichael's attorneys, both premised on Carmichael's providing the Government with "extraordinary substantial assistance."  Though Morris said that plea negotiations did not progress because Carmichael (apparently through his attorney) was adamant that any settlement would not involve forfeiture of the Carmichael Center, Morris's statement does not contradict Carmichael's assertions that *his attorneys* never advised him that a ten-year plea deal might be available if he forfeited the Carmichael Center.  Beyond that, Feaga's affidavit discusses two plea discussions premised on substantial cooperation, not on forfeiture.  None of Carmichael's attorneys attested to conveying any information about such plea discussions to Carmichael.  Although the Government's plea offers were informal, Carmichael's counsel had a continuing obligation to consult with Carmichael regarding important developments, including plea negotiations, in his case.  *See Diaz*, 930 F.2d at 834; *Frye*, 566 U.S. at __, 132 S. Ct. at 1407.  Otherwise, such informal plea negotiations would be unlikely to turn into formal plea offers.

In short, Carmichael has alleged sufficient facts that, if true, would establish deficient performance.

### B. Carmichael sufficiently alleged prejudice.

As for *Strickland*'s prejudice prong, a petitioner must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Lafler v. Cooper*, 566 U.S. __, 132 S. Ct. 1376, 1384 (2012). We have clarified that a "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). In the plea-negotiations context, the prejudice requirement focuses on whether counsel's unconstitutionally ineffective performance affected the outcome of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). To demonstrate prejudice where the petitioner did not enter a guilty plea but instead proceeded to trial, the petitioner must show that, but for the ineffective assistance of counsel, a reasonable probability existed that (1) the plea offer would have been presented to the court (*i.e.* the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) the court would have accepted its terms; and (3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were, in fact, imposed. *Lafler*, 566 U.S. at __, 132 S. Ct. at 1385.

Here, Carmichael sufficiently alleged that counsel's deficient performance prejudiced him. First, Carmichael sufficiently alleged facts that, if taken as true,

23

establish both that a plea offer would have been made and that he would have accepted a plea deal. While Carmichael maintained his innocence throughout the proceedings, he also attested that he instructed his counsel to seek a plea deal. And though James stated that negotiations on at least one plea offer stalled because Carmichael did not want to forfeit the Carmichael Center, Carmichael stated that he would have pled guilty and accepted the ten-year offer even with the inclusion of the forfeiture of the Carmichael Center. In addition, as we have discussed, the ten-year plea negotiation that Feaga referenced did not include forfeiture of the Carmichael Center, and Feaga instead cited the defense team's desire for a guaranteed lower sentence as the impediment to the deal. Thus, the record does not conclusively contradict Carmichael's assertion that he would have accepted a guilty plea.

Nor does anything in the record indicate that the Government would have withdrawn the offers it communicated during plea negotiations. The record is likewise devoid of anything indicating that the court would not have accepted the plea deals discussed in the informal plea negotiations. Finally, the ten- and twenty-year plea offers that counsel discussed are significantly less than the forty years' imprisonment that Carmichael eventually received at sentencing.

Because Carmichael has alleged sufficient facts that, if true, establish ineffective assistance of counsel, an evidentiary hearing is warranted.

24

## IV.    Conclusion

For the foregoing reasons, we **REVERSE** the district court's denial of Carmichael's § 2255 petition and **REMAND** to the district court to conduct an evidentiary hearing on Carmichael's ineffective-assistance claim.