[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12986
Non-Argument Calendar
_____

D.C. Docket Nos. 2:15-cv-00178-MHT-TFM; 2:12-cr-00104-MHT-TFM-3


FRANK J. TEERS,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(June 28, 2018)

Before WILLIAM PRYOR, BRANCH and HULL, Circuit Judges.

PER CURIAM:

Frank J. Teers, a federal prisoner proceeding pro se, appeals from the denial,

without an evidentiary hearing, of his 28 U.S.C. § 2255 motion to vacate, set aside,

or correct his sentence.  In his § 2255 motion, Teers alleged that his trial counsel provided ineffective assistance by failing to adequately advise him regarding the government's plea offer.  After careful review of the record and the parties' briefs, we affirm.

## I. BACKGROUND

### A.    Indictment, Trial, and Direct Appeal

In 2012, a federal grand jury indicted Teers and two codefendants on: (1) one count of conspiracy to commit bank and wire fraud, in violation of 18 U.S.C. § 1349 (Count 1); (2) six counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Counts 2-7); and (3) three counts of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2 (Counts 8-10).  Teers pled not guilty and proceeded to trial.

The evidence at trial showed that Teers, a securities broker, and his codefendants engaged in a scheme to obtain multimillion dollar loans from financial institutions under the false representation that one of the codefendants controlled a large bond portfolio that could serve as collateral for the loans.  United States v. Teers, 591 F. App'x 824, 827 (11th Cir. 2014) (unpublished).  Through that scheme, the defendants obtained loans totaling more than $60 million.  Id. Ultimately, Teers was found guilty at trial and sentenced to 97 months' imprisonment.  Id. at 834-35.

2

On direct appeal, Teers raised several claims challenging both his convictions and sentence. See id. at 835-47. In December 2014, this Court affirmed Teers's convictions and 97-month sentence. Id. at 847.

## B.    Teers's § 2255 Motion & Supporting Memorandum

In March 2015, Teers filed his § 2255 motion to vacate and a supporting memorandum (collectively "the § 2255 motion"). Teers's motion raised a single claim of ineffective assistance of counsel, based on his trial counsel's alleged failure to adequately advise Teers regarding the government's plea offer. Teers admitted that he received a plea offer from the government, which his trial counsel Paul Cooper communicated to him via e-mail. According to Teers, counsel advised him to reject the plea offer and proceed to trial, stating several times that his case could be won and that he had a 70 to 80 percent chance of winning. Teers contended that Cooper failed to accurately advise him regarding the law and facts of his case, preventing him from making "an informed and conscious choice" about whether to plead guilty and depriving him of the opportunity to receive a significantly reduced sentence.

## C.    Trial Counsel's Affidavit

In response to Teers's § 2255 motion, trial counsel Cooper filed an affidavit and supporting attachments recounting these pretrial events. In his affidavit, Cooper confirmed that the government offered to allow Teers to plead guilty to an

3

information charging a single count of conspiracy under 18 U.S.C. § 371, which carried a maximum sentence of 5 years (60 months).  Cooper forwarded this offer to Teers via e-mail and attached the e-mail to his affidavit.

In the e-mail, Cooper informed Teers of the plea offer and explained it was possible, under certain conditions, Teers would have to serve only 33 months of the 5-year sentence in prison.  Cooper told Teers to "think about this [offer] for a day or so and talk it over with your family, and let's talk about it."  Cooper explained: "If you decide to go with this deal, you would have to come in and give a proffer.  You would be a witness at trial and testify on behalf of the Government against [codefendants] Hulse and Mock.  You would have to give substantial assistance in your testimony."[1]

Cooper's e-mail included a forwarded message from the prosecutor containing sentencing guidelines estimates of the best- and worst-case scenarios if Teers were either (1) to proceed to trial under the indictment, or (2) to enter a guilty plea to the charges in the indictment.  All of these estimates—even the best-case scenario if Teers pled guilty to the indictment—resulted in sentencing ranges greater than five years.

Teers responded that "[i]f [the prosecutor] is coming to us with an offer at this late hour doesn't that kind of indicate that he may think his case is weak?

---

[1]Codefendant Hulse ultimately pled guilty, but codefendant Mock proceeded to trial with Teers.  Teers, 591 F. App'x at 834.

That's what it says to me."  Teers further stated that "[t]he plea bargain outlined is not enough incentive to lie and say I did something wrong," and noted "[y]ou have told me on several occasions that you think this case can be won."  Teers indicated he would call Cooper to discuss the plea offer further.

In a note to file, Cooper documented that phone call, which took place two days after Cooper relayed the plea offer.  Cooper's note indicated (1) that he "explained the recently [sic] email about the plea bargain and the worst case/best case scenarios for sentencing," and (2) that "Teers want[s] to go to trial and testify. He does not want any deal."

On two subsequent occasions, Cooper reminded Teers of the government's plea offer and asked Teers to confirm whether or not he wished to accept the offer. In one e-mail, Cooper noted that if Teers accepted the plea offer, they could ask the judge for a sentence of less than five years.  In another, Cooper reminded Teers that, as his attorney, it was Cooper's "job to relate all offers to you and advise you about problems that I see."

Cooper attested that "Teers rejected the plea agreement because he maintained that he was innocent of all charges" and that Teers maintained his innocence "at all times" and "under any circumstances and scenarios."  Cooper told Teers he thought they could win, but that to win, the jury would have to believe Teers and not the government's witnesses and evidence.  Cooper never

guaranteed Teers a win at trial, or that the government's case was weak, or that the jury would believe Teers. Likewise, Cooper never told Teers his case was a "slam dunk" or gave Teers a percentage or odds of winning. Cooper maintained that, "[f]rom the beginning to the end, [Teers] wanted to go to trial because he stated he was innocent."

Additionally, Cooper averred that he: (1) gave Teers a copy of the indictment and "continuously discussed the allegations" with him; (2) mailed Teers all of the discovery, sent Teers every pleading filed by either party and every ordered issued by the district court; (3) informed Teers of every legal and evidentiary development in the case; (4) sent Teers the proffers of government witnesses; (5) discussed with Teers the government's "reverse proffer" detailing the evidence it planned to present at trial and provided Teers with a detailed timeline prepared by the government; (6) provided Teers a condensed version of the pattern jury instructions on conspiracy and fraud; (7) provided Teers a preliminary estimate of the sentencing guidelines calculations prepared by the Probation Office; and (8) forwarded Teers evidence that "looked bad" or "was damaging" and discussed it with Teers. Cooper attached several e-mails between himself and Teers in support of these statements.

**D.    Government's Response to § 2255 Motion**

The government also responded to Teers's § 2255 motion, arguing that Teers failed to establish either deficient performance or prejudice as to his ineffective assistance claim.  As to performance, the government contended Cooper's affidavit and attached exhibits belied Teers's allegation that Cooper failed to properly advise him regarding the government's plea offer.  The government also submitted that Teers failed to demonstrate prejudice because he had not alleged, much less demonstrated, that the court would have accepted the terms of the plea agreement if Teers had accepted the government's offer.  Finally, the government argued that Teers was not entitled to an evidentiary hearing because he failed to plead sufficient facts demonstrating an entitlement to relief.

**E.    Magistrate Judge's Report & Recommendation**

A magistrate judge issued a report and recommendation ("R&R") recommending that Teers's § 2255 motion be denied without an evidentiary hearing and that the case be dismissed with prejudice.  The magistrate judge concluded that (1) Teers's allegation that Cooper deficiently advised him regarding the government's plea offer was belied by Cooper's affidavit and the attached exhibits, (2) Teers did not deny the veracity of Cooper's affidavit or present any evidence to refute Cooper's account, and (3) Cooper fully advised Teers of the terms of the plea offer and his sentencing exposure both if he pled guilty and if he

7

proceeded to trial, and provided Teers a detailed accounting of the government's evidence.

The magistrate judge further determined that Cooper did not provide an inflated estimate of Teers's chance of winning at trial. The magistrate judge found that "[a]lthough Cooper told Teers he thought he could win at trial, he tempered any optimism by telling Teers that . . . the jury must believe him and not believe the government's witnesses and evidence." Cooper's e-mails to Teers identified evidence that looked bad, was damaging, or was strongly against Teers, and Cooper did not guarantee Teers a win at trial.

The magistrate judge also highlighted that Teers did not (1) dispute that he stated the plea offer was an indication of weakness in the government's case and was not favorable enough to induce him to plead guilty or (2) deny that he had always insisted to Cooper that he was innocent and wanted to go to trial. Thus, Teers's present insistence that he would have accepted the plea if properly advised was undermined by his repeated claims of innocence.

## F.     Teers's Objections to the R&R and District Court's Order

Teers objected to the R&R, asserting, among other things, that he relied completely on Cooper's expertise, experience, and knowledge in deciding to go to trial, and that Cooper "never advised [him] of the realities of entering a plea," instead repeatedly telling Teers that his case was winnable. Teers represented that

8

although Cooper informed him of the plea offer, he never "really [sat] down and truly discuss[ed] the favorable plea offer with [Teers]." Teers also generally alleged that all of his communications with Cooper and his understanding of the government's evidence were tinged by Cooper's repeated assurances that they could win at trial.[2]

The district court overruled Teers's objections, adopted the R&R, and denied Teers's § 2255 motion. This Court granted Teers a certificate of appealability ("COA") on the issue of whether the district court erred in denying his ineffective assistance claim without an evidentiary hearing.

## II. DISCUSSION

### A.    Applicable Law

Section 2255 provides that a district court shall hold an evidentiary hearing on a federal prisoner's § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In other words, a § 2255 movant is entitled to an evidentiary

---

[2]In his objections to the R&R, Teers also raised, for the first time, a claim under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), and Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763 (1972), asserting that the government failed to disclose exculpatory evidence about his bank fraud, such as recorded conversations between Teers, as a securities broker, and John Richard Crouch, a bank employee, which Teers asserts were recorded during his employment. Teers also argued that he told Cooper about the recordings, and Cooper was ineffective for failing to obtain them. Teers now seeks to raise these claims on appeal as well. Because these claims fall outside the scope of this Court's COA, we do not consider them further. See Williams v. McNeil, 557 F.3d 1287, 1290 n.4 (11th Cir. 2009) ("Our appellate review is limited to the issues specified in the COA."); see also Dell v. United States, 710 F.3d 1267, 1272 (11th Cir. 2013) ("[A]n appellant granted a COA on one issue cannot simply brief other issues as he desires in an attempt to force both the Court and his opponent to address them.").

hearing as long as he alleges reasonably specific, non-conclusory facts that, taken as true, would entitle him to relief.  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014).  The district court need not hold an evidentiary hearing, however, where the movant's allegations are patently frivolous, based on unsupported generalizations, or affirmatively contradicted by the record.[3]  Id.

Under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), a petitioner demonstrates ineffective assistance of counsel by showing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant.  Nejad v. Att'y Gen., 830 F.3d 1280, 1290 (11th Cir. 2016).  The petitioner must satisfy both prongs to demonstrate ineffective assistance of counsel.  Bishop v. Warden, 726 F.3d 1243, 1254 (11th Cir. 2013).

Counsel's performance is entitled to a presumption of reasonableness, and to overcome that presumption, a defendant must show that "no competent counsel would have taken the action that his counsel did take."  Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000).  An attorney's failure to adequately represent his client during plea negotiations can amount to deficient performance under Strickland.  See Missouri v. Frye, 566 U.S. 134, 140-44, 132 S. Ct. 1399,

---

[3]We review the denial of an evidentiary hearing in a § 2255 proceeding for an abuse of discretion.  Winthrop-Redin, 767 F.3d at 1215.  A district court abuses its discretion if it applies an incorrect legal standard, unreasonably or incorrectly applies the law, follows improper procedures in making its determination, or makes clearly erroneous factual findings.  Id.

1405-08 (2012).  Counsel has a duty to communicate any formal plea offers from the prosecution, Frye, 566 U.S. at 145, 132 S. Ct. at 1408, and must also "assist the defendant actually and substantially in deciding whether to enter the plea," Owens v. Wainwright, 698 F.2d 1111, 1113 (11th Cir. 1983).  To meaningfully advise the defendant in the plea context, counsel "must be sufficiently familiar with the facts and law" of the defendant's case.  Owens, 698 F.2d at 1114.

Even if counsel performed deficiently in advising the defendant to reject a plea offer, the defendant still must demonstrate prejudice to be entitled to relief on a § 2255 motion.  See Lafler v. Cooper, 566 U.S. 156, 163-64, 132 S. Ct. 1376, 1385 (2012); see also Osley v. United States, 751 F.3d 1214, 1223 (11th Cir. 2014).  To show prejudice in the plea context, the defendant must show that, but for counsel's ineffective advice, there is a reasonable probability that: (1) he would have accepted the plea offer; (2) the prosecution would not have withdrawn it due to any intervening circumstances; (3) the court would have accepted its terms; and (4) the conviction or sentence, or both, would have been less severe than that actually imposed.  Lafler, 566 U.S. at 164, 132 S. Ct. at 1385.

To satisfy the first prong of this test, the defendant must allege that he would have accepted the plea offer absent counsel's deficient performance.  See Rosin v. United States, 786 F.3d 873, 878 (11th Cir. 2015).  However, the movant's "own conclusory after-the-fact-assertion" that he would have accepted a guilty plea,

without more, is insufficient to demonstrate an entitlement to relief.  See id. at 879; see also Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991) ("Given appellant's awareness of the plea offer, his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer.").  This is particularly so where the defendant consistently professed his innocence both before and after trial.  Osley, 751 F.3d at 1225 ("Osley's insistence on his innocence, both before and after trial, makes it more difficult to accept his claim that he would have taken a fifteen-year plea deal."); see also Rosin, 786 F.3d at 878-79 (finding defendant failed to sufficiently allege prejudice where the record showed he had consistently maintained his innocence and refused to accept responsibility).

**B.    Analysis**

Here, the district court did not abuse its discretion in denying Teers's § 2255 motion without an evidentiary hearing because the record conclusively demonstrates that he is entitled to no relief.  28 U.S.C. § 2255(b).  First, Cooper's affidavit and supporting exhibits demonstrate that Cooper communicated the government's plea offer to Teers and conveyed the benefits of that offer in terms of Teers's sentencing exposure.  See Frye, 566 U.S. at 145, 132 S. Ct. at 1408; Owens, 698 F.2d at 1113-14.  Specifically, Cooper informed Teers that the plea

offer carried a maximum sentence of 5 years; that under the plea deal, he might

serve as little as 33 months in prison; and that even under a best case scenario,

Teers's sentencing range if he went to trial or pled guilty to the indictment as

charged would be greater than 5 years.  Moreover, the record shows that in the

months leading up to trial, Cooper repeatedly discussed with Teers the evidence

that Cooper viewed as bad or damaging, provided Teers with multiple estimates

regarding his sentencing exposure if he proceeded to trial, informed Teers about

the applicable law and how the jury likely would be instructed, and twice reminded

Teers of the option to accept the government's plea offer.  See Owens, 698 F.2d at

1114.

Teers does not dispute that Cooper provided him such information, but

rather contends that all of this information was presented through the lens of

Cooper's repeated assertions that Teers had a good chance of winning at trial, such

that Teers did not fully understand the relative strength of the government's case or

the advantage of accepting the plea offer instead of proceeding to trial.[4]  As the

---

[4]For the first time on appeal, Teers also argues that Cooper should have advised Teers of his ability to take an Alford plea.  Teers contends that such a plea would have given him the "best of both worlds" by allowing him to continue maintaining his innocence while also receiving the benefit of "a reduced sentence for taking the plea."  Because Teers never raised this issue before the district court, it is abandoned and we need not address it.  See Samak v. Warden, FCC Coleman-Medium, 766 F.3d 1271, 1273 n.1 (11th Cir. 2014) (citing Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) for the proposition that issues not raised in district court and raised for the first time on appeal will not be considered by this Court).

In any event, however, we note that no such Alford plea was ever offered to Teers, and there is no indication in the record that the government (or the district court) would have

13

magistrate judge noted, however, there is a difference between expressing optimism about a defendant's chances at trial and guaranteeing that the defendant will win.  Cf. Lafler, 566 U.S. at 163, 132 S. Ct. at 1384 ("In this case all parties agree the performance of respondent's counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial." (emphasis added)).  Even if Cooper did tell Teers that he had a 70 to 80 percent chance of winning at trial (as Teers alleges), Cooper never guaranteed that Teers would win and consistently advised Teers about evidence that would be damaging to him at trial.  Id.  Cooper also made it clear that Teers's credibility would be an issue for the jury.  In short, Teers has not demonstrated that Cooper's advice concerning the government's plea offer was objectively unreasonable. Nejad, 830 F.3d at 1290; Owens, 698 F.2d at 1113-14.

Second, even if Teers had demonstrated that Cooper performed deficiently, he has not established prejudice.  See Lafler, 566 U.S. at 163-64, 132 S. Ct. at 1385; Bishop, 726 F.3d at 1254.  Here, the record evidence affirmatively contradicts Teers's claim that he would have accepted the government's plea offer but for Cooper's alleged misadvice.  See Rosin, 786 F.3d at 878-79.  Teers has persistently refused to accept responsibility and adamantly professed his innocence

accepted an Alford plea from Teers had he offered to make one.  Indeed, in conveying the government's actual plea offer to Teers, Cooper informed Teers that the proposed plea agreement would require him to "come in and give a proffer" and to be a witness at trial against his codefendants, indicating that the government's plea offer would require an affirmative admission of guilt from Teers.

14

throughout his direct criminal and § 2255 proceedings.  Id.  In response to Cooper's initial e-mail about the government's plea offer, Teers stated that the offer was "not enough incentive to lie and say [he] did something wrong," and Cooper averred that Teers maintained his innocence "throughout the whole time" and "in all scenarios," and insisted on going to trial.  See id.  Additionally, Teers testified in his own defense at trial, maintaining his innocence throughout his testimony, and declined to allocute at sentencing, thereby foregoing an opportunity to accept responsibility.  See id.

On appeal, Teers does not contest Cooper's assertions that he has always insisted on his innocence, and maintains that he "never admitted his guilt because he [is] in fact innocent."  Indeed, as discussed in footnote 3, supra, Teers now contends that he should have been given the opportunity to enter an Alford plea, which would have allowed him to "gain the benefits" of a plea with "[n]o admission of guilt."  But no such plea offer was ever made by the government; rather, the government's plea offer was that Teers had to cooperate and admit his guilt.  In sum, the record belies Teers's claim that he would have accepted the government's five-year plea offer absent Cooper's allegedly deficient performance.  Rosin, 786 F.3d at 878-79.  Rather, "[t]he evidence shows that [Teers], in fact, had absolutely no interest in accepting any responsibility or guilt whatsoever," and

15

even now is not truly interested in admitting any wrongdoing.  Id. at 879; see also

Osley, 751 F.3d at 1224-25; Diaz, 930 F.2d at 835.

## IV. CONCLUSION

For the reasons explained above, the record demonstrates Teers is entitled to

no relief.  As such, the district court did not abuse its discretion in denying Teers's

§ 2255 motion without an evidentiary hearing.  Winthrop-Redin, 767 F.3d at 1215.

Accordingly, we affirm.

**AFFIRMED.**