[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10175

_____

D.C. Docket Nos. 8:09-cv-01158-SCB-MAP; 8:05-cr-00143-T-24-MAP


MICHAEL A. ROSIN,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 14, 2015)

Before WILSON and ANDERSON, Circuit Judges, and VOORHEES,[*] District
Judge.

_____

[*] Honorable Richard L. Voorhees, United States District Judge for the Western District of
North Carolina, sitting by designation.

WILSON, Circuit Judge:

Michael Rosin is a federal prisoner currently serving a 264-month term of imprisonment. He was convicted of thirty-five counts of health care fraud in violation of 18 U.S.C. §§ 1347 and 2, and thirty-five counts of making false statements related to health care matters in violation of 18 U.S.C. §§ 1035 and 2. Rosin appeals the district court's denial of his motion to vacate his conviction pursuant to 28 U.S.C. § 2255. Rosin contends that his trial counsel rendered ineffective assistance by grossly underestimating the sentence that he could receive if he were convicted at trial and by failing to pursue a plea bargain. The district court denied Rosin's § 2255 motion without affording him an evidentiary hearing. We must determine whether doing so was an abuse of its discretion.

## I.

Rosin, a former dermatologist, owned a dermatology clinic and laboratory in Sarasota, Florida. In 2004, Rosin's long-time office manager filed a qui tam action alleging that Rosin had committed Medicare fraud by performing hundreds of unnecessary Mohs surgeries on his elderly patients.[1] These allegations led to an

---

[1] Mohs surgery is a specialized procedure that is designed to remove complex forms of skin cancer. Mohs surgery is generally performed in stages by dermatologists who receive additional specialized training.

2

investigation of Rosin's medical practice and, eventually, to the filing of criminal charges against him.  Rosin pleaded not guilty.

Rosin was tried in 2006 over a span of seventeen days.  At trial, Rosin was represented by Theresa Van Vliet, Patsy Zimmerman-Keenan, and Gregory Kehoe.  Many of Rosin's former employees testified against him at trial, and Rosin testified in his own defense.  While on the stand, Rosin challenged the credibility of his former employees, claiming that they were biased because they stood to gain financially in exchange for their testimony and that they had set him up.  After deliberating for one-and-one-half days, the jury convicted Rosin on all seventy counts charged in the indictment.

At Rosin's sentencing hearing, the district court calculated an offense level of thirty-eight and assigned a criminal history category of I.  His calculated Sentencing Guidelines range was approximately nineteen to twenty-four years' imprisonment.  He was given an opportunity to make a statement before the imposition of his sentence, during which he never accepted personal responsibility for the crimes for which he had been convicted.  The judge then sentenced him to a twenty-two-year term of imprisonment.  Rosin subsequently challenged his conviction and sentence on direct appeal, but we affirmed.  *See United States v. Rosin*, 263 F. App'x 16 (11th Cir. 2008) (per curiam).

In 2009, Rosin timely filed the present § 2255 motion alleging that his trial counsel was ineffective for grossly underestimating the prison sentence that he would receive if he was convicted at trial and for failing to pursue a plea bargain. He also requested that the district court hold an evidentiary hearing. In support of his § 2255 motion, Rosin executed and submitted his own affidavit to the court. The government opposed Rosin's § 2255 motion, arguing that he was not entitled to an evidentiary hearing on any of his claims because the record established that they lacked merit. In support, the government submitted affidavits executed by Rosin's trial counsel. After consideration of the parties' arguments and the record evidence, the district court denied Rosin's § 2255 motion without affording him an evidentiary hearing. It concluded that Rosin failed to adequately allege that he suffered prejudice as a result of his trial counsels' alleged ineffective assistance. Rosin appealed the district court's order.

We previously considered Rosin's § 2255 challenge in *Rosin v. United States*, 522 F. App'x 578 (11th Cir. 2013) (per curiam), but we concluded that the district court erred when it applied the wrong legal standard to Rosin's contentions. In denying Rosin's § 2255 motion, the district court erroneously applied a "clear and convincing evidence" standard, rather than the required "reasonable probability" standard, in evaluating the prejudice prong of the two-part analysis for claims of ineffective assistance of counsel under *Strickland v. Washington*, 466

4

U.S. 668, 104 S. Ct. 2052 (1984).  Consequently, we vacated the district court's order and remanded the matter with instructions that it apply the appropriate legal standard under *Strickland* and determine whether Rosin was entitled to an evidentiary hearing.  *See Rosin*, 522 F. App'x at 579.  On remand, and having applied the correct legal standard, the district court again denied Rosin's § 2255 motion without granting his request for an evidentiary hearing.  It concluded that Rosin failed to adequately allege that he suffered prejudice as a result of his trial counsels' alleged ineffective assistance.  This appeal ensued.

## II.

As mentioned above, both parties submitted affidavits in support of their respective arguments.  Rosin attests in his affidavit that he asked Van Vliet if five to six years of imprisonment was a reasonable estimation of his potential prison sentence, to which Van Vliet replied, "That's about right."  Rosin claims that Van Vliet never told him that the court could potentially impose a twenty-two-year term of imprisonment, nor did she discuss the possibility of a plea bargain, its advantages or disadvantages, or whether it was in his best interest to seek one.  Rosin asserts that "had [he] known [his] sentence could have been enhanced to 22 years[,] [he] would have insisted Theresa Van Vliet seek a plea bargain on [his] behalf or [he would] get a new attorney who would."

5

However, Van Vliet's affidavit states that she gave Rosin a general assessment of a potential sentence if he were convicted as charged in the indictment, including the statutory maximum penalty for Medicare fraud, possible enhancements for conduct such as an abuse of position of trust, and informed him that his total sentencing exposure was the statutory maximum sentence for each charge in the indictment. Van Vliet contends that Rosin adamantly professed his innocence during her entire representation of him.

According to Van Vliet, she never once believed that there was a possibility that Rosin would consider a plea bargain because Rosin, as she puts it, "shut down any discussion of such a course of action." Because Rosin was unwilling to consider a genuine assessment of his case, Van Vliet avers she conducted a mock jury trial to persuade Rosin to consider a plea bargain in the event the mock trial produced unfavorable results. According to Van Vliet, Rosin did not "fare well" in front of the mock jury; jurors commented negatively regarding his credibility. Van Vliet claims that despite such negative feedback, Rosin continued to profess his innocence and insisted on proceeding to trial.

Kehoe's affidavit largely corroborates the statements made by Van Vliet in her affidavit. According to Kehoe, at their initial meeting, "[I]t was clear from [Rosin's] professed statements of innocence that [Rosin] did not want to consider pleading guilty under any circumstances." Kehoe contends that Rosin re-affirmed

6

his position on several other occasions.  Kehoe notes that the most considerable example of Rosin's unwillingness to concede guilt was when Rosin accused his trial counsel of being disloyal to him after counsel raised the prospect of a guilty plea.  Kehoe attests that he was retained for the sole purpose of assisting Van Vliet at trial, and if the prospect of reaching a plea deal was being considered realistically, Van Vliet would have handled the case without his assistance.

Zimmerman-Keenan's affidavit also corroborates the statements made by Van Vliet and Kehoe in their affidavits.  Zimmerman-Keenan recalls having a "clear sense and understanding" that Rosin did not want to concede guilt and that Rosin desired to proceed to trial and testify in his own defense.

## III.

Our analysis is focused on whether Rosin was entitled to an evidentiary hearing before the district court denied his § 2255 motion for post-conviction relief.  On appeal, Rosin argues that his trial counsel rendered ineffective assistance by incorrectly estimating his prison sentence to be five to six years and for failing to pursue plea negotiations.  Rosin contends that the reasonable inference to be drawn from the factual allegations in his affidavit is that he would have accepted a guilty plea in exchange for a more favorable sentence had he been properly advised by trial counsel.  Rosin asserts that the competing factual

allegations in his affidavit and in the affidavits of his trial counsel entitle him to an evidentiary hearing. We disagree.

We review a district court's denial of an evidentiary hearing in a § 2255 proceeding for an abuse of discretion. *Aron v. United States*, 291 F.3d 708, 714 n.5 (11th Cir. 2002). The district court is not required to grant a petitioner an evidentiary hearing if the § 2255 motion "and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Anderson v. United States*, 948 F.2d 704, 706 (11th Cir. 1991). The district court should order an evidentiary hearing and rule on the merits of a petitioner's claim, however, "if the petitioner alleges facts that, if true, would entitle him to relief." *Aron*, 291 F.3d at 714–15 (internal quotation marks omitted). Nevertheless, an evidentiary hearing is unnecessary when the petitioner's allegations are "'affirmatively contradicted by the record'" or if such claims are "'patently frivolous.'" *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *United States v. Guerra*, 588 F.2d 519, 520–21 (5th Cir. 1979)).

When a challenge to the validity of a conviction on the basis of ineffective assistance of counsel arises in the context of the plea process, *Strickland*'s two-part test applies. *See Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 369–70 (1985). Therefore, in order to be entitled to an evidentiary hearing on any such challenge, a defendant must show that: (1) his trial counsel's "performance was deficient" and

(2) that his trial counsel's "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

Trial counsel is considered to have performed deficiently when she has "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Trial counsel's representation is judged by a standard of "reasonableness under prevailing professional norms," and there is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 688–89, 104 S. Ct. at 2065. Trial counsel's deficient performance prejudices the defense when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S. Ct. at 2068. Where the defendant argues that his lawyer's unprofessional conduct during the plea stage prejudiced him, a defendant must show that there is "a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial." *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (per curiam); *see Hill*, 474 U.S. at 59, 106 S. Ct. at 370. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

In order for Rosin to have been entitled to an evidentiary hearing, he had to make a credible allegation that he was prejudiced by his counsels' deficient

9

performance.[2]  In this case, prejudice requires a showing that, but for his trial counsels' error, Rosin would have pleaded guilty and not insisted on going to trial. *See Hill*, 474 U.S. at 59, 106 S. Ct. at 370.   The alleged errors of his trial counsel were the erroneous calculation of Rosin's potential prison sentence if he were to be convicted at trial and the failure to pursue plea negotiations.  Therefore, Rosin was required to allege that he would have accepted a guilty plea and would not have insisted on going to trial but for his trial counsels' alleged miscalculation of his potential prison sentence and failure to pursue plea negotiations. *See id*. at 59, 106 S. Ct. at 370; *see also Coulter*, 60 F.3d at 1504.

Before the district court, Rosin alleged that, but for his trial counsels' error, he would have insisted that his trial counsel "seek" a plea bargain on his behalf. Rosin did not allege, however, that he would have *accepted* a plea of guilt and would not have insisted on going to trial. *See Coulter*, 60 F.3d at 1504 (evidence of a defendant's willingness to enter a plea agreement, without proof that the defendant would have actually accepted a plea offer, was insufficient to establish that he was prejudiced by his counsel's alleged deficient performance).  Merely alleging that he would have insisted that trial counsel "seek" a plea bargain is insufficient to show that the result of Rosin's proceedings would have been different had he done so.  Rosin's assertion to the district court that he would have

---

[2] Since we conclude that Rosin's allegations are insufficient to establish prejudice, we need not discuss the performance prong.  *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

10

instructed his counsel to, in essence, inquire about a plea offer also assumes that he could have rejected such an offer had one been extended.  Thus, because Rosin did not allege that he would have accepted a guilty plea and abstained from proceeding to trial but for the alleged errors of his trial counsel, Rosin has failed to show that the alleged errors prejudiced him.  *See Hill*, 474 U.S. at 59, 106 S. Ct. at 370; *Coulter*, 60 F.3d at 1504.

Furthermore, the record evidence affirmatively contradicts Rosin's claims on appeal that he would have accepted a plea bargain.  *See Holmes*, 876 F.2d at 1553. It is well-settled that the district court is not required to grant an evidentiary hearing when the defendant's claims are affirmatively contradicted by the record evidence, nor is a hearing required if the claims are grounded upon generalizations that are unsupported by the record evidence.  *See Guerra*, 588 F.2d at 521 (no hearing necessary when claims are based on unsupported generalizations); *Holland v. United States*, 406 F.2d 213, 216 (5th Cir. 1969) (per curiam) (no hearing necessary when a petitioner's petition is supported by only factual claims that are legally incapable of justifying a finding in his favor).[3]

Rosin persistently refused to accept responsibility and adamantly professed his innocence during all stages of his criminal proceedings.  In Van Vliet's

---

[3] Decisions issued prior to the close of business on September 30, 1981, by the former Fifth Circuit bind this court.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

11

affidavit, for example, she states that Rosin maintained his innocence and insisted on going to trial during her entire representation of him. Even after a mock trial proved that Rosin lacked credibility and would not "fare well" in front of a real jury, Rosin insisted on going to trial anyway. Moreover, Kehoe states in his affidavit that Rosin refused to accept guilt in their initial meeting. According to Kehoe, Rosin then reaffirmed his unwillingness to concede guilt on several occasions—going so far as to accuse his trial counsel of being disloyal after counsel raised the prospect of conceding guilt. Rosin's desire to proceed to trial and his refusal to accept responsibility is also corroborated by Zimmerman-Keenan's affidavit.

Rosin's refusal to accept any responsibility is further demonstrated by the record of Rosin's trial. While testifying, Rosin blamed other people for his plight, submitting to the jury that he had been set up by his employees and suggesting that his employees stood to gain financially in exchange for their testimony. To be clear, Rosin was by no means required to admit guilt or assume responsibility for the conduct alleged. Still, Rosin's actions at trial reflected an infinite resolve to proclaim his innocence; they did not manifest any intention on Rosin's part to accept responsibility for the conduct alleged. Even at his sentencing hearing, when afforded the opportunity to make a statement to the court and to, perhaps, accept personal responsibility for the conduct alleged, Rosin refused. We refuse to review

12

Rosin's appeal in a vacuum; his assertions on appeal are informed by everything that came before it.

Thus, the record evidence patently contradicts Rosin's assertion on appeal that he would have accepted a guilty plea and not insisted on going to trial but for his trial counsels' alleged error. *See Holmes*, 876 F.2d at 1553. The evidence shows that Rosin, in fact, had absolutely no interest in accepting any responsibility or guilt whatsoever. *See Coulter*, 60 F.3d at 1504. Rosin requests that we, in essence, accept his conclusory assertion on appeal that his failure to accept a guilty plea and his insistence on going to trial were caused by his trial counsels' ineffective assistance. However, in the absence of any evidence other than his own conclusory after-the-fact assertion—and given the record evidence contradicting it—we cannot accept that conclusion.

## IV.

Rosin failed to show that his trial counsels' alleged deficient performance prejudiced him, and his allegations are affirmatively contradicted by the record evidence. Although we generally prefer that a district court simply hold an evidentiary hearing, in this circumstance we are compelled to find that the district court did not go so far as to abuse its discretion in denying Rosin's § 2255 motion without affording him an evidentiary hearing.

**AFFIRMED.**

13