[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-12273
Non-Argument Calendar

————————————————

D.C. Docket Nos. 3:15-cv-01196-TJC-MCR; 3:13-cr-00206-TJC-MCR-1

AMELIO MACK,

Petitioner–Appellant,

versus

UNITED STATES OF AMERICA,

Respondent–Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(July 23, 2019)

Before ROSENBAUM, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Amelio Mack, a federal prisoner, appeals the district court's denial of his 28

U.S.C. § 2255 motion to vacate.  This Court issued Mack a certificate of

appealability ("COA") on the issue of whether the district court erred in denying, without an evidentiary hearing, his claim that sentencing counsel rendered ineffective assistance by failing to object to the application of the dangerous-weapon enhancement under U.S.S.G. § 2D1.1(b)(1).  After careful review, we vacate and remand for an evidentiary hearing.

## I.

Mack pled guilty in May 2014 to a conspiracy—lasting from "about 2005 through in or about April 2013"—to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.

In connection with the plea agreement, Mack admitted to the following factual basis for his guilty plea.  Mack began distributing cocaine in Jacksonville in 2005. Cedric Sapp became a regular buyer in 2006, purchasing increasing amounts over time.  Mack and Sapp became close, and Sapp "was able to sell as much cocaine as Mack could provide."  Mack continued to supply Sapp through April 2013, delivering the cocaine, up to ten kilograms at a time, packaged in "distinctive silver tape" to a warehouse Sapp used as a front.  On April 18, 2013, narcotics detectives executed a search warrant at the warehouse after Mack had made his delivery earlier that day, finding 8 kilograms of cocaine and approximately $106,000.  More than nine months later, on February 5, 2014, Mack was arrested at his residence, where a

2

search revealed around $280,000 in cash, various jewelry, and the "distinctive silver tape" used to package the cocaine he supplied to Sapp.

The presentence investigation report ("PSR") states that during the search of Mack's residence, officers also found a Glock pistol and a 12-gauge shotgun. Based on these two guns, the PSR recommended the application of a two-level dangerous-weapon enhancement. *See* U.S.S.G. § 2D1.1(b)(1). The PSR recommended applying this enhancement because "a firearm was present at the defendant's residence along with drug proceeds and items used in conjunction with his drug-trafficking activities." Mack's counsel filed a sentencing memorandum arguing for leniency and presenting various mitigating factors, but he did not object to the PSR's guideline calculations.

At Mack's sentencing, the district court applied the dangerous-weapon enhancement and calculated a guideline range of 235 to 293 months of imprisonment, based on a total offense level of 35 and a criminal-history category of IV. The court then sentenced Mack to 235 months.

Mack timely filed a counseled motion to vacate his sentence under 28 U.S.C. § 2255, alleging ineffective assistance of sentencing counsel for failing to object to the dangerous-weapon enhancement. Mack alleged that the grounds for the enhancement were "glaringly tenuous" because the guns were found well after the conspiracy ended and in a place with no apparent connection to his drug-trafficking

3

activities.  Further, Mack alleged, had counsel investigated the matter, he would have discovered that the guns belonged to his daughter and his wife.

The district court denied Mack's § 2255 motion without a hearing and denied a COA.  The court concluded that Mack had not carried his burden of showing that no reasonable counsel would have failed to object to the enhancement.  The court therefore did not address whether Mack was prejudiced.

The district court offered two main reasons for concluding that counsel's performance was not deficient.  First, according to the court, counsel made a reasonable strategic choice to avoid discussing the fact that the guns were found "alongside lavish jewelry, cars, large sums of cash, surveillance equipment, and drug packaging materials," as well as that Mack had evaded arrest for months and attempted to flee his residence on the day he was arrested.

Second, the district court stated, it was not obvious that the enhancement did not apply because the guns were found in close proximity to drug proceeds.  In the court's view, Mack's possession of the guns therefore had the potential to facilitate the charged crime by being available for use to protect drug proceeds.  The court elaborated that, notwithstanding the indictment's statement that the conspiracy ended in April 2013, the conspiracy "could have continued beyond Sapp's arrest." In support of that statement, the court noted that Mack and Sapp were not the only

4

persons involved in the conspiracy, that Mack became a fugitive after Sapp's arrest, and that drug proceeds and Mack's "signature silver tape" were found in his home.

Mack appealed, and a judge of this Court granted the COA set out above.

## II.

We review for an abuse of discretion a district court's denial of an evidentiary hearing in a § 2255 proceeding. *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015). A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect way, follows improper procedures in making a determination, or clearly errs in making its factual findings. *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215 (11th Cir. 2014).

A petitioner is entitled to an evidentiary hearing if he alleges specific, non-conclusory facts that, if true, would entitle him to relief. *Hernandez v. United States*, 778 F.3d 1230, 1232 (11th Cir. 2015); *see* 28 U.S.C. § 2255(b) (stating that a hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). But a court need not hold an evidentiary hearing if the petitioner's allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Hernandez*, 778 F.3d at 1232 (quotation marks omitted).

When evaluating a claim of ineffective assistance related to sentencing, we apply the familiar framework of *Strickland v. Washington*, 466 U.S. 668 (1984).

5

*Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017) (ineffective-assistance claim based on a failure to object to drug quantity at sentencing). Under this framework, the petitioner must show both that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Id.*

Trial counsel's performance is judged against prevailing professional norms, and there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional conduct. *Rosin*, 786 F.3d at 877. Trial counsel's performance is deficient where he has made errors so serious that he is not functioning as "counsel" for the purposes of the Sixth Amendment. *Id.* "When the law is well established, a lawyer's ignorance of it can amount to deficient performance." *Griffith*, 871 F.3d at 1329.

To meet *Strickland*'s prejudice prong the petitioner must show that, but for counsel's unprofessional errors, there is a reasonable probability that the results of the proceedings would have been different. *Id.* at 1330. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694).

Mack claims that his sentencing counsel was ineffective for failing to object to the dangerous weapon enhancement under U.S.S.G. § 2D1.1(b)(1). That provision directs courts to apply a two-level increase to the offense level when "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1).

6

The state of the law regarding the application of the firearm enhancement was well settled at the time of Mack's sentencing. To justify this enhancement, the government bears the initial burden of showing, by a preponderance of the evidence, either "that the firearm was present at the site of the charged conduct or . . . that the defendant possessed a firearm during conduct associated with the offense of conviction." *United States v. Stallings*, 463 F.3d 1218, 1220–21 (11th Cir. 2006). But "the mere fact that a drug dealer possesses a firearm does not necessarily give rise to the firearms enhancement." *Id.* Rather, "the government must show that the firearm had some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Id.* (quotation marks omitted). In other words, the government must show "some nexus beyond mere possession." *Id.* After the government meets its initial burden, the burden shifts to the defendant, who must show that "a connection between the weapon and the offense was clearly improbable." *Id.* (quotation marks omitted).

Further, it was well established that the government was required to present "reliable and specific" evidence in support of a challenged sentencing enhancement. *See United States v. Newman*, 614 F.3d 1232, 1238 (11th Cir. 2010) ("A district court's factual findings used to support a sentencing enhancement must be based on reliable and specific evidence and cannot be based on speculation."). Courts may not "speculate concerning the existence of a fact which would permit a more severe

sentence under the guidelines." *United States v. Cataldo*, 171 F.3d 1316, 1321 (11th Cir. 1999) (quotation marks omitted).

Here, we conclude that Mack was entitled to an evidentiary hearing on his § 2255 motion because he pled facts that, if true, show that counsel performed deficiently by failing to object to the § 2D1.1(b)(1) enhancement. To begin with, there is no basis in the record to conclude that the firearms were "present at the site of the charged conduct." *Stallings*, 463 F.3d at 1220. The indictment alleged a cocaine-trafficking conspiracy involving warehouses; there was no evidence that any of the charged conduct took place at Mack's home. While there was evidence that Mack had used the "distinctive silver tape" later found at his home to package cocaine, there is no evidence that he packaged the cocaine at his home, or that there was any spatial or temporal overlap between his packaging activities and his possession of the guns.

As to whether the guns were possessed during relevant conduct, the other route for the government to justify a firearm enhancement, the record does not conclusively refute Mack's allegations that they were not. *See Stallings*, 463 F.3d at 1220. In denying Mack's § 2255 motion, the district court concluded that Mack had likely used the guns to protect the substantial drug proceeds found at his home. We have no problem with the idea that protection of drug proceeds during an ongoing conspiracy may be enough to apply the § 2D1.1(b)(1) enhancement. Drug

proceeds may be used to facilitate and perpetuate a drug-trafficking conspiracy, so their protection may facilitate the offense as well.

But here, nothing in the record indicates that Mack's drug-trafficking activities extended beyond Sapp's arrest in April 2013. The indictment, the factual stipulation in support of the plea agreement, and Mack's § 2255 motion all state that the conspiracy ended in April 2013, well before Mack's February 2014 arrest. Although the factual stipulation states that Sapp and other individuals obtained a warehouse as a front for their drug-related activities, Mack is not listed as one of those individuals. And the record's only reference to Mack supplying someone other than Sapp with cocaine related to activities dating back to 2005 and 2006. Based on this record, too much speculation is required to say that Mack's drug-trafficking activities continued after April 2013. *See Cataldo*, 171 F.3d at 1321. Without any evidence of temporal overlap between Mack's drug-trafficking activities and the guns found in February 2014, the record does not show "that the firearm had some purpose or effect with respect to the drug trafficking crime." *Stallings*, 463 F.3d 1220. Plus, Mack asserted in his § 2255 motion that the guns belonged to his daughter and wife. *See id.* at 1221 (noting the government's failure to address whether firearms found in the defendant's home belonged to other occupants).

Thus, Mack's § 2255 motion indicates that there were clear grounds, based on well-established caselaw, to raise a meritorious objection to the enhancement. But

9

counsel failed to do so.  And we cannot reasonably attribute that failure to a strategic decision.

The district court reasoned that counsel may have decided to try to avoid bringing attention to the collection of materials found along with the gun, as well as the circumstances of his arrest.  But these unflattering facts were already before the court as part of the PSR.  What's more, counsel had reason to know that the government would highlight these details in its sentencing presentation—as it did—given his arguments in mitigation.  So there would have been little strategic value in not pursing a meritorious objection in comparison to the substantial benefit Mack would have received if the court had not applied the enhancement.  In particular, removing the enhancement would have reduced Mack's guideline range from 235–293 months to 188–235 months, a difference of nearly four years (47 months) at the low end of the range and nearly five years (58 months) at the top of the range.  No reasonable counsel would have foregone that reduction for the dubious benefit of attempting to avoid unflattering facts at sentencing that were already before the court, regardless.

As for prejudice, the record suggests that it is reasonably probable that Mack would have received a lower sentence but for counsel's failure to object to the enhancement.  In *Molina-Martinez v. United States*, the Supreme Court predicted that in most cases, the application of an incorrect, higher guideline range will be

sufficient to show a reasonable probability of a different result. 136 S. Ct. 1338, 1346–47 (2017). "Absent unusual circumstances," the Court stated, a defendant who proves that he was sentenced under an incorrect, higher guideline range "will not be required to show more" to establish prejudice. *Id.* at 1347. Although *Molina-Martinez* concerned plain-error review on direct appeal, we have applied its principles in the context of evaluating *Strickland* prejudice. *See Griffith*, 871 F.3d at 1337–39.

Here, if Mack succeeds in proving that counsel unreasonably failed to object to the firearm enhancement, he likely will have established that counsel's deficient performance resulted in an erroneous guideline range that increased the recommended sentence by four to five years. Given that Mack was sentenced to the low end of this range, and in the absence of any indication in the record that the court would have imposed the same sentence regardless of the guideline range, we conclude that there is a reasonable probability of a different result. *See Molina-Martinez*, 136 S. Ct. at 1347.

Because Mack pled specific, non-conclusory facts that, if true, would have entitled him to relief, the district court abused its discretion in denying his § 2255 motion without an evidentiary hearing. *See Winthrop Redin*, 767 F.3d at 1216. Accordingly, we vacate and remand for an evidentiary hearing.

**VACATED AND REMANDED.**