RENDERED:  JANUARY 27, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1407-MR

ROBERT CURRY                                                                 APPELLANT

APPEAL FROM HARLAN CIRCUIT COURT
v.           HONORABLE KENT HENDRICKSON, JUDGE
ACTION NO. 13-CR-00246

COMMONWEALTH OF KENTUCKY                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, KAREM, AND McNEILL, JUDGES.

KAREM, JUDGE:  Robert Curry appeals from the Harlan Circuit Court's

supplemental order, entered after an evidentiary hearing, denying his motion to

vacate sentence pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42.

Curry contends that his trial counsel was ineffective for misinforming him about

his parole eligibility under a plea offer and for recommending that he go to trial.

Upon review, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2014, a jury found Curry guilty of intentional murder and the trial court imposed a sentence of twenty-five years in accordance with the jury's recommendation. Other charges against Curry of disorderly conduct, menacing, resisting arrest, and being a persistent felony offender in the second degree (PFO II) were dismissed.

The Kentucky Supreme Court affirmed Curry's murder conviction on direct appeal. *Curry v. Commonwealth*, No. 2014-SC-000310-MR, 2016 WL 669364 (Ky. Feb. 18, 2016). Its opinion set forth the underlying facts of the case:

> In September 2012, John Anderson was homeless and sleeping in a pickup truck parked near Penix's house. Penix, whom Anderson had known and sometimes lived with, let Anderson use the bathroom in his house. Sometime during the evening of September 5, 2012, Anderson went to Penix's house to bathe. While Anderson was there, Curry arrived, and Curry and Penix began drinking. When the two became intoxicated, Anderson left and went to the truck to sleep.
>
> Early in the morning of September 6, 2012, Anderson returned to Penix's house and saw Penix, who was covered in blood, lying on the floor. Anderson felt Penix's neck to see if he was alive and, when he determined that Penix was not, called 911. While he was on the phone with the 911 operator, Anderson saw Curry lying on the floor near a couch. He checked Curry,

determined that Curry was alive, and went outside to wait for emergency personnel to arrive.

When police officers arrived, Curry, who was initially difficult to arouse and was later determined to be intoxicated, was covered in blood. The officers arrested Curry and transported him to the state police post for questioning. The officers observed that Curry's hands were bruised and swollen and, after the medical examiner determined that Penix had been beaten to death, a grand jury indicted Curry on multiple counts, the only pertinent one of which is intentional murder.

Curry's defense theory at trial was that someone else had beaten Penix to death, and he pointed to Anderson and two other men as possible alternative perpetrators. The jury did not believe his alternative perpetrator theory and convicted Curry of intentional murder.

*Id*. at *1.

After the conviction was affirmed, Curry filed a *pro se* motion pursuant to RCr 11.42, claiming ineffective assistance of counsel. The trial court denied the motion without conducting an evidentiary hearing.

Curry appealed the denial of the motion to this Court, which remanded the case for a hearing solely on his allegation that, prior to trial, he rejected an advantageous plea offer on his attorney's assurance that he had an excellent defense. *Curry v. Commonwealth*, No. 2018-CA-001310-MR, 2020 WL 4917646, at *2 (Ky. App. Aug. 21, 2020), *discretionary review denied* (Apr. 20, 2021). Of particular concern to this Court was the inaccurate information Curry

apparently received regarding his parole eligibility under the plea offer as admitted to by his trial counsel. Under the terms of that offer, the Commonwealth, also misinterpreting the statute, agreed to recommend a sentence of seven years, enhanced to ten years by the PFO II charge, in exchange for a plea of guilt to second-degree manslaughter. Curry claimed his counsel advised him to reject the offer because he would have to serve 85 percent of the sentence before becoming eligible for parole. However, as this Court pointed out, a correct reading of the statute would make Curry eligible for parole after serving only 20 percent of the ten-year sentence because manslaughter in the second degree is a Class C felony, Kentucky Revised Statutes (KRS) 507.040(2), which is not subject to the delayed parole eligibility date for violent offenses under KRS 439.3401(4).

On remand from this Court, the trial court conducted the evidentiary hearing via Zoom, at which Curry's trial counsel and Curry himself testified. Curry also entered into evidence a recorded portion of the hearing held shortly before his trial, at which the plea offer was discussed. We set forth the pertinent sections of that exchange:

> **Defense counsel**: The reason I hadn't filed a motion [for a continuance] is it looked like there was some light at the end of the tunnel in regards to a deal. I'd made an offer and the Commonwealth rejected it. I didn't know they'd rejected it until yesterday.
>
> **Commonwealth**: We made an offer, you counteroffered, . . . I got your counteroffer Monday and I told you on

Wednesday that I rejected your counteroffer. But our offer is still out there.

**Judge**: Well, let me ask you something about this, if you don't object to talking to me about this, what was your last offer?

 . . .

**Commonwealth**: It's to amend the murder charges to . . . manslaughter second, and seven years enhanced by the PFO to ten years to serve. That's the bottom line. The end.

**Judge**: So your problem is that it goes from manslaughter second to an 85 percent deal, is that what your problem with that is?

**Commonwealth**: He's suggesting that it be negligent homicide.

 . . .

**Judge**: Which would be a Class D felony.

**Defense Counsel**: Enhance it to Class C because of PFO II, give him three years for a few other little, menacing and resisting or something, to run concurrent, with the five years for Class D, still enhance it to a C, give him credit, he's already been incarcerated in one form or another for a year and a half. He'd have the PFO II status, he'd be convicted of another felony, he'd still be in jail, the only difference would be five years instead of ten. With the super amount of evidence, with the lack of evidence. This is almost totally a circumstantial case they are going to present here in a week and a half.

 . . .

**Judge**: So, you have 85 percent on either one of them, the ten or the five. If it was a D and taken to a C by PFO he'd still have to serve 85 percent, is that correct?

**Commonwealth**: That's correct.

**Judge**: Let's make sure. Somebody from Probation and Parole come over here for just a second . . . If you have a Class D felony that is PFO, and a person gets let's say five years on a Class D that is PFO, which makes it a C, is that an 85 percent serve out?

**Probation and Parole**: I'm pretty sure it is.

**Defense Counsel**: It's a PFO II, though, your honor.

**Probation and Parole**: That I'd have to look.

At the evidentiary hearing, Curry's defense counsel admitted that he misunderstood the parole eligibility issue and misinformed Curry he would have to serve 85 percent of the sentence:

> **11.42 Counsel**: How did you convey the plea offer to Mr. Curry?
>
> **Defense counsel**: I conveyed the plea offer wrong because I misinterpreted PFO II statute, . . . Judge was stating about the 85 percent, was it 85 percent serve out time before eligibility for parole, and Mr. Boggs [the prosecutor] apparently was under the same impression because he confirmed with a nod, yes it's 85 percent, so based on my conversation with the Commonwealth and my own misinterpretation of the statute, I've misinterpreted that statute wrong and . . . told Mr. Curry that it was 10 years and he had to serve 85 percent of that which would be 8.5 years. That's what I told Mr. Curry.

Upon further questioning defense counsel stated:

I totally misread that statute. I didn't understand it. It should have been a 20 percent serve out time which would have been two years . . . before he'd been eligible for parole had he taken the deal, and at the time we were standing there on February 6, 2014, he would have only had to serve six more months to have been eligible for parole. So not only did I not convey . . . what should have been the correct plea deal but had I understood that he only had six months to go to be eligible for parole, given the risks of taking it to trial, I would have strongly urged him to have taken that deal. I misinterpreted the deal. I didn't understand. I misinterpreted the PFO statute to be 85 percent when in reality it was 20 percent.

Curry testified about his recollections of the plea offer:

**11.42 Counsel**: When [defense counsel] first presented you the plea offer, what . . . was the plea offer for?

**Curry**: They was saying at 85 percent, eight-and-a-half years, ten years. And . . . I would have took that too. I did want to take that, but somehow or another, I, I got . . . talked out of that.

**11.42 Counsel**: What do you mean by that?

**Curry**: Well, . . . he explained to me that . . . he was humbled about the situation . . . he felt comfortable that, you know, and competent that we could win this in trial, so I took his word for that, you know. . . . I said well, may I see my motion discovery . . . which I've never laid eyes on to this day, and, you know, and I wanted to see what the evidence was presented on me before I even went further with this, but, you know, he, he told me he had everything under control, so I took his word for that and, and 'cause you know he, he's an expert, I'm, I'm not. . . . I don't know nothing about law. I just . . . paid him to, to represent me.

On cross-examination by the Commonwealth, Curry confirmed he would have accepted the plea deal with 20 percent parole eligibility. He was then asked, "You would have pled guilty and stated you in fact did kill Mr. Penix on that day? You would have said that in court?" He replied that he would have taken the 20 percent deal. The Commonwealth attorney pressed Mr. Curry further, "Were you prepared to say in open court that you did in fact kill Mr. Penix?" He replied, "I don't remember that night. I can't come out and tell you the facts that I killed somebody."

Following this evidentiary hearing the trial court found that Curry had in fact received ineffective advice from his attorney regarding parole eligibility under the Commonwealth's offer. The trial court further found, however, that Curry had not succeeded in showing that he was prejudiced by his counsel's deficient performance because he testified that he was not prepared to plead guilty to killing the victim. The trial court concluded: "Acceptance of a plea offer requires an admission of guilt. Because Curry was not, and is not, willing to admit guilt, the Court finds that Curry failed to show there was a reasonable probability he would have accepted the Commonwealth's plea offer."

The trial court entered a supplemental order consistent with its findings, again denying Curry's RCr 11.42 motion, and this appeal by Curry followed. Further facts will be set forth below as necessary.

## II. STANDARD OF REVIEW

In order to prove ineffective assistance of counsel, a defendant must show: (1) that counsel's representation was deficient in that it fell below an objective standard of reasonableness, measured against prevailing professional norms; and (2) that he was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 690-92, 104 S. Ct. 2052, 2064-67, 80 L. Ed. 2d 674 (1984); *Gall v. Commonwealth*, 702 S.W.2d 37, 39 (Ky. 1985). "[T]he movant has the burden of establishing convincingly that he or she was deprived of some substantial right which would justify the extraordinary relief provided by [a] post-conviction proceeding[.]" *Skaggs v. Commonwealth*, 488 S.W.3d 10, 14 (Ky. App. 2016). "Both *Strickland* prongs must be met before relief may be granted." *Prescott v. Commonwealth*, 572 S.W.3d 913, 920 (Ky. App. 2019).

In *Missouri v. Frye*, 566 U.S. 134, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), the United States Supreme Court held that the Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012). When, as in this case, a defendant alleges that ineffective assistance of counsel caused him to reject a plea offer and subsequently receive a more severe sentence at trial, a defendant meets the first prong of *Strickland* by demonstrating that "counsel's representation fell

below an objective standard of reasonableness" in advising him to reject the offer. *Id*. at 163, 132 S. Ct at 1384.

Under the second, "prejudice" prong, the defendant must show that, "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id*. at 164, 132 S. Ct. at 1385.

When a trial court conducts an evidentiary hearing regarding the claim of ineffective assistance of counsel, RCr 11.42(6) requires the court "make findings determinative of the material issues of fact and enter a final order accordingly." *Cawl v. Commonwealth*, 423 S.W.3d 214, 216 (Ky. 2014). "[W]hen reviewing a trial court's findings of fact following an RCr 11.42 evidentiary hearing, an appellate court utilizes the clearly erroneous standard set forth in Kentucky Rules of Civil Procedure (CR) 52.01. Findings of fact are not clearly erroneous if supported by substantial evidence. Even though claims of ineffective assistance of counsel are subject to *de novo* review, a reviewing court should defer

to the determination of facts made by the trial judge." *Saylor v. Commonwealth*, 357 S.W.3d 567, 570-71 (Ky. App. 2012) (citations omitted).

## III. ANALYSIS

The trial court found that Curry met the first *Strickland* prong because his defense counsel plainly misadvised him about his parole eligibility under the plea offer. This finding is fully supported by substantial evidence in the record, consisting of the recording of the pretrial bench conference at which neither defense counsel, the prosecutor, the judge, nor the Probation and Parole representatives were certain about parole eligibility, in addition to defense counsel's unequivocal testimony that he misinterpreted the statute and that he would have strongly advised Curry to accept the offer if had he known the correct parole eligibility date.

However, the trial court found that Curry failed to meet the second *Strickland* prong, which requires a showing that, but for the ineffective advice, there is a reasonable probability the defendant would have accepted the plea offer and the trial court would have accepted its terms. At the evidentiary hearing, Curry did not initially respond directly when the Commonwealth asked whether he was prepared to state in court that he in fact killed the victim on that day. Curry simply replied that he would have taken the 20 percent deal. When the Commonwealth pressed Curry and asked the question again, Curry testified that he

-11-

did not remember the night of the murder and could not state that he killed somebody. When a defendant unconditionally pleads guilty, he "admits the factual accuracy of the various elements of the offenses with which he is charged." *Taylor v. Commonwealth*, 724 S.W.2d 223, 225 (Ky. App. 1986). Curry's unwillingness to make such an admission signifies that he could not meet the second prong of the *Strickland* test and supports the trial court's finding that Curry could not have entered the plea because he was unwilling to admit he killed the victim.

The trial court's ruling is supported by numerous cases in which federal appellate courts have held that post-conviction petitioners were unable to meet the second *Strickland* prong because they were unwilling to concede guilt.

In *Rosin v. United States*, a dermatologist was convicted by a jury of multiple counts of Medicare fraud and sentenced to twenty-two years in prison. 786 F.3d 873, 874 (11th Cir. 2015). He sought post-conviction relief, arguing his counsel was ineffective for grossly underestimating the prison sentence he would receive and for failing to pursue a plea bargain. The Eleventh Circuit Court of Appeals held that he failed to meet the *Strickland* standard because he persistently refused to accept responsibility for the crimes, maintained his innocence, refused to discuss a plea bargain, and insisted on going to trial. *Id*. at 878-79. Although Curry, unlike Rosin, stated he was ready to discuss and accept a plea offer, he similarly evinced "absolutely no interest in accepting any responsibility or guilt

-12-

whatsoever." *Id*. at 879. Consequently, like Rosin, he fails to meet the *Strickland* standard.

Similarly, in *Garcia v. United States*, a petitioner convicted of multiple counts of distributing methamphetamine insisted during plea negotiations and trial that he never brought meth to South Dakota and consequently could not sign the factual basis statement required for a plea agreement. 679 F.3d 1013, 1014 (8th Cir. 2012). The Eighth Circuit Court of Appeals held that he could not establish that "he would have pleaded guilty but for his counsel's erroneous advice." *Id*. Curry's refusal to admit the factual basis of the offense, even at the post-conviction hearing, means he could not establish that he would have met the requirements of a guilty plea but for mis-advice regarding parole eligibility.

In the same way, in *Humphress v. United States*, the petitioner, who was convicted by a jury of conspiracy to murder an FBI agent, repeatedly asserted at his post-conviction hearing that he never willingly entered into an agreement to murder a federal official. 398 F.3d 855, 859 (6th Cir. 2005). The Sixth Circuit Court of Appeals held he failed to establish a reasonable probability that he would have pled guilty. *Id*. In *United States v. Stevens*, the claimant maintained his innocence when he took the stand at his post-trial hearing, leading the Eight Circuit Court of Appeals to conclude that even if his counsel's performance was inadequate, he "failed to establish that there was any reasonable probability that he

would have acknowledged his guilt had he been properly advised about the risks of trial." 149 F.3d 747, 748 (8th Cir. 1998).

Curry describes the Commonwealth's questions at the RCr 11.42 hearing as muddled, convoluted, and unclear to him. He contends that his testimony that he would have taken the 20 percent deal, would even have taken the 85 percent deal, and that he did not remember a whole lot from the night of the crime, was sufficient to meet the prejudice prong and that he had no obligation at the evidentiary hearing to state on the record that he killed the victim. He now claims he certainly understood that by accepting the plea offer he would have to admit guilt. However, he did not demonstrate or convey a willingness to admit guilt in his responses to the Commonwealth's questions, which were not ambiguous but very straightforward. Curry also attempts to distinguish the above-cited federal cases by arguing that the defendants in those cases were far more "adamant" about their innocence than he was. A trial court's findings regarding the weight and credibility of the evidence shall not be set aside unless clearly erroneous. CR 52.01. In this case, the trial court found that Curry's statements unequivocally showed he was unwilling to admit culpability, a necessary predicate to the entry of a guilty plea. This factual finding is fully supported by Curry's own testimony and will not be disturbed on appeal.

-14-

**CONCLUSION**

For the foregoing reasons, the Harlan Circuit Court's supplemental order denying the RCr 11.42 motion is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

J. Ryan Chailland
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky