[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11470

_____

EDWARD DIMARIA,

                                   Plaintiff-Appellant,

*versus*

UNITED STATES OF AMERICA,

                                   Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-24195-KMM

_____

Before JORDAN and BRASHER, Circuit Judges, and COVINGTON,* District Judge.

COVINGTON, District Judge:

Edward DiMaria pled guilty, pursuant to a plea agreement, to one count of conspiracy to make false statements to accountants, to falsify a public company's books and records, and to commit securities fraud; and to one count of making false statements in a filing with the Securities Exchange Commission. DiMaria engaged in a cookie-jar accounting scheme, which is the shifting of revenues or expenses from the period in which they should be recognized to another period in order to help the company fulfill earning targets in upcoming quarters. He was sentenced to 120 months of imprisonment and ordered to pay $21 million in restitution.

The district court denied his subsequent 28 U.S.C. § 2255 motion. DiMaria was granted a certificate of appealability on two issues: first, whether the district court abused its discretion by denying, without holding an evidentiary hearing, DiMaria's claim that counsel was ineffective due to a failure to adequately investigate the case; and second, whether the district court abused its discretion by denying, without holding an evidentiary hearing, DiMaria's claim that counsel was ineffective due to a failure to

---

* Honorable Virginia M. Covington, United States District Judge for the Middle District of Florida, sitting by designation.

advise him on loss calculations for sentencing purposes. After careful review, we affirm.

**I**

DiMaria was the chief financial officer of Bankrate, a publicly traded company. As stated in the factual basis for his plea:

> [DiMaria] and his co-conspirators maintained a spreadsheet - which [DiMaria] and his co-conspirators referred to as "cushion" - that documented and tracked expense accruals that were not supported. Rather than reduce Bankrate's improperly recorded expense accruals immediately, as required under the accounting rules, between June 2011 and September 2014, [DiMaria] directed and agreed with his co-conspirators to selectively reverse certain of the expense accruals in certain later quarters as a means of falsely inflating Bankrate's publicly reported earnings and adjusted earnings.

The factual basis also included the admission that DiMaria "and his co-conspirators concealed and agreed to conceal certain of the false and misleading entries they had made and caused to be made from Bankrate's independent auditors and others through various means."

By entering the plea agreement, DiMaria substantially reduced his sentencing exposure from a potential 25-year sentence to a combined ten-year maximum.

As part of the plea agreement, DiMaria agreed that the loss amount for his offenses was at least $25 million. At the change of

plea hearing, the magistrate judge asked the government to explain how the loss amount was calculated. The government explained that it retained a forensic accounting firm which identified shareholders of Bankrate stock during the periods in which it:

> publicly reported for the first time in September 2014 that Bankrate's financial statements could no longer be relied upon, [such that] shareholders in Bankrate stock at that time suffered a loss due to the decline in Bankrate stock. In addition, in a later period of time, Bankrate then, in fact, did restate its financial statements and at that time Bankrate stock, again, suffered a loss due to the public announcement of the restated financial statements.

The magistrate judge then asked DiMaria if he agreed that the government could prove these facts beyond a reasonable doubt. He responded, "[y]es."

Following his sentencing, DiMaria filed a motion under 28 U.S.C. § 2255 to vacate his conviction and sentence and requested an evidentiary hearing. He argued that his plea was involuntary because he received ineffective assistance of counsel. First, he claimed that his counsel should have advised him that the government could not establish the materiality element of the charged offenses. Specifically, DiMaria argued that counsel failed to investigate reports in counsel's possession from internal investigations conducted by the accounting firm Grant Thornton and the law firm Wachtell, Lipton, Rosen & Katz. Second, he argued that counsel should have recognized that the government's

proposed loss amount of $25 million was unsupported, and thus should have challenged the loss amount, and again advised him as such.

The magistrate judge issued a report and recommendation, finding that both of DiMaria's claims were "conclusory." The magistrate judge found that an evidentiary hearing was not warranted because the claims were "contradicted by the record and devoid of merit." The district court adopted the report and recommendation and denied DiMaria's motion.

## II

"In a § 2255 proceeding, we review legal issues de novo and factual findings under a clear error standard." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted). "We review a district court's denial of an evidentiary hearing in a § 2255 proceeding for an abuse of discretion." *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015). "The district court is not required to grant a petitioner an evidentiary hearing if the § 2255 motion 'and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Id.* (quoting 28 U.S.C. § 2255(b)).

## III

As DiMaria's ineffective assistance of counsel claims are based upon the plea process, he "must show that: (1) his trial counsel's performance was deficient and (2) that his trial counsel's deficient performance prejudiced the defense." *Id.*

## A.

DiMaria argues that counsel failed to adequately investigate two reports in counsel's possession: the Grant Thornton report and the Wachtell Lipton report. Grant Thornton prepared a one-page report which asserted that the financial statements were accurate, and Wachtell Litpon prepared a presentation to the SEC to explain its position that the company did not make material misstatements. "[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

It is undisputed that DiMaria's counsel had each report in his possession. It is also undisputed that each report was prepared while the conspiracy was still ongoing, and that DiMaria concealed false and misleading entries from Grant Thornton as it prepared its report. Yet, DiMaria claims that his counsel failed to undertake an investigation based upon these reports, which then would have uncovered that the government could not establish the materiality element of his charged offenses.

DiMaria's claims are conclusory and fail to establish how further investigation based upon these reports would have uncovered exculpatory evidence. DiMaria was aware of these reports as he participated in the investigations, and DiMaria has not

made any specific allegations of how his counsel misinterpreted the reports. *See Pericles v. United States*, 567 F. App'x 776, 781 (11th Cir. 2014) (rejecting an ineffective assistance of counsel claim when an attorney failed to investigate petitioner's criminal history because petitioner "could have simply told his attorney about his personal criminal history"). Furthermore, DiMaria does not explain how the Grant Thornton report has any credibility given that he admitted to concealing false and misleading entries from the Grant Thornton auditors.

Even if the Court were to credit DiMaria's assertion that these reports were credible, DiMaria has failed to identify a case in which the cookie-jar accounting scheme in which he participated was not a crime. An attorney has a duty either to reasonably investigate a line of defense or "to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington,* 466 U.S. 668, 691 (1984). Electing not to pursue a line of defense that apparently no other court has recognized is quintessentially reasonable. DiMaria's counsel did not perform deficiently by allegedly failing to investigate these reports.

Additionally, even if he had shown deficient performance, DiMaria cannot establish any prejudice as a result of this failure by his counsel. The evidence against DiMaria was significant. Bankrate admitted its prior financial reports were unreliable and then publicly restated its financial reports, causing investors to lose money. Thus, if DiMaria's counsel had reviewed and further investigated the reports, his counsel likely still would have needed

to weigh them against the voluminous evidence of criminal wrongdoing. In light of that voluminous evidence, counsel likely would have determined that a conviction at trial was likely. *See Hill*, 474 U.S. at 59 ("[T]he determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea."). DiMaria also received a significant bargain by accepting the plea, through the lessening of his sentencing exposure. *See Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) ("[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."). DiMaria has failed to establish that it would have been "rational" to reject the plea even if the reports did have some exculpatory value. *Id.*

On this record, we find that DiMaria failed to establish his claim regarding the supposed failure to investigate. The district court properly exercised its discretion in denying the claim without an evidentiary hearing. *See Gordon v. United States*, 518 F.3d 1291, 1302 (11th Cir. 2008) ("When we can conceive of a reasonable motivation for counsel's actions, we will deny a claim of ineffective assistance without an evidentiary hearing.").

## B.

Next, DiMaria claims that his counsel was ineffective for (1) failing to recognize that the government could not have established the $25 million loss, and (2) failing to advise DiMaria as such.

According to DiMaria, if counsel had understood this Court's decision in *United States v. Stein*, 846 F.3d 1135 (11th Cir. 2017), then counsel would have discovered that the loss amount was actually between $0-50,000.

In *Stein*, we held that "the government must show that the investors relied on [the] fraudulent information to satisfy the 'but for' causation requirement under U.S.S.G. § 2B1.1." *Id.* at 1153. However, the defendant in *Stein* was convicted by a jury. *Id.* at 1143. Here, DiMaria pled guilty, and stipulated to the loss amount as part of his plea agreement. Accordingly, the government was not required to prove the loss amount at sentencing, as the parties had already stipulated to this fact.

Insofar as DiMaria is claiming that counsel should have advised him not to stipulate to the $25 million loss amount because the loss amount under *Stein* was much lower, we find this claim conclusory. DiMaria provides speculative arguments that counsel could have made to demonstrate that the loss amount was, in fact, $0-50,000. *See Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner."). Meanwhile, the government has consistently provided a detailed explanation of how it reached its loss amount calculation. Given this sharp contrast between the government's detailed explanation and DiMaria's speculative claim, we find no basis for the assertion that DiMaria's counsel acted deficiently by advising him to stipulate to the government's proposed loss amount. *See Stein*, 846 F.3d at 1153 (holding that "the government

may show reliance . . . through . . . specific circumstantial evidence" and that "requiring individualized proof of reliance for each investor is often infeasible or impossible").

Furthermore, we find DiMaria's claim that he did not understand how the loss amount was calculated to be baseless. DiMaria pled guilty after a lengthy explanation by the government at the change of plea hearing regarding its methodology in reaching the $25 million loss amount. Immediately after hearing this explanation, DiMaria agreed that the government would be able to establish these facts beyond a reasonable doubt at trial. Thus, DiMaria was informed of how the loss amount was calculated when he agreed to it. *See Holmes v. United States,* 876 F.2d 1545, 1553 (11th Cir. 1989) (appellant sufficiently alleges deficient assistance where "his attorney grossly misinformed him of the parole consequences . . . *and* the trial court failed to advise appellant of his ineligibility for parole") (emphasis added). Additionally, DiMaria does not explain why he agreed to a loss amount as large as $25 million if he seemingly believes that the actual loss amount was $0-50,000. Nor does he explain how his knowledge as the chief financial officer of a publicly-traded company and his accreditation as a certified public accountant did not enable him to understand the loss amount calculations.

In short, we find DiMaria's claim conclusory and contradicted by the record. The government provided an explanation of its methodology for calculating the stipulated loss amount, and then DiMaria agreed to that loss calculation. DiMaria

does not identify how counsel performed deficiently, nor has he shown that he was prejudiced in any way. *Rosin*, 786 F.3d at 877. Accordingly, the district court was well within its discretion to deny an evidentiary hearing. *Id.*

## IV.

We affirm the district court's denial of DiMaria's 28 U.S.C. § 2255 motion without an evidentiary hearing.

**AFFIRMED.**